UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT JOHNSON, | Case No.  5:21-cv-04195-EJD |
| Plaintiff, | **ORDER GRANTING DEFAULT JUDGMENT** |
| v. | |
| PROSPECT VENTURE LLC, et al., | Re: Dkt. No. 18 |
| Defendants. | |

Plaintiff Scott Johnson brings this action against Prospect Venture LLC and Alchena Capital LLC (together, "Defendants"), alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., and the California Unruh Civil Rights Act (the "Unruh Act"), Cal. Civ. Code §§ 51-53.  *See* Complaint ("Compl.") ¶¶ 29-42, Dkt. No. 1.  Before the Court is Plaintiff's Motion for Default Judgment.  He seeks injunctive relief, along with statutory damages and attorneys' fees and costs.  Motion for Default Judgment ("Mot."), Dkt. No. 18.  Defendants have not appeared in this matter and did not oppose or otherwise respond to the motion.  Having considered Plaintiff's papers, the Court **GRANTS** Plaintiff's motion for default judgment.[1]

## I.    Background

Plaintiff is a level C-5 quadriplegic who cannot walk and has significant manual dexterity impairments.  Compl. ¶ 1.  Plaintiff says that he uses a wheelchair for mobility and has a specially equipped van.  *Id.*  Defendant Prospect Venture LLC is the alleged owner of the real property

---

[1] On May 25, 2022, the Court found this motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b).  *See* Dkt. No. 23.

Case No.: 5:21-cv-04195-EJD
ORDER GRANTING DEFAULT JUDGMENT

1   located at 1655 S De Anza Blvd, Cupertino, California. *Id.* ¶¶ 2–3. Defendant Alchena Capital

2   LLC is the alleged owner of Kikusushi Japanese Restaurant ("Kikusushi"), the business located at

3   the same address. *Id.* ¶¶ 4–5; *see also* Exhibit 5, Dkt. No. 18-7.

4       Plaintiff alleges that he visited Kikusushi once in March 2021 with the intent to avail

5   himself of its goods and services and to determine if the Business complied with disability access

6   laws. Compl. ¶ 10. When Plaintiff visited Kikusushi, he found that it did not provide wheelchair

7   accessible outside dining surfaces. *Id.* ¶¶ 12–13. The outside dining surfaces did not have

8   sufficient knee or toe clearance for wheelchair users. Declaration of Scott Johnson in Support of

9   Plaintiff's Request for Default Judgment ("Johnson Decl."), ¶ 3, Dkt. No. 18-4. He also found

10  that Kikusushi failed to have a level landing between the outdoor ramp and the entrance of the

11  building, in violation of ADA Standards. *Id*. ¶ 4.

12      Plaintiff alleges that he frequents Cupertino, CA often and would like to return to

13  Kikusushi once it is ADA compliant. Compl. ¶ 27. To that end, Plaintiff brought this action for

14  injunctive relief and damages under the ADA and Unruh Act. Plaintiff sought entry of default as

15  to each Defendant on September 23, 2021, which the Clerk entered on September 29, 2021. Dkt.

16  Nos. 1, 13-16. On December 7, 2021, Plaintiff filed the present Motion for Default Judgment.

17  Dkt. No. 18. As noted, neither Defendant has made any appearance in the action.

18      **II.    Legal Standard**

19      Default judgment may be granted when a party fails to plead or otherwise defend against

20  an action for affirmative relief. Fed. R. Civ. P. 55(a). Discretion to enter default judgment rests

21  with the district court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). When deciding

22  whether to enter default judgment, the court considers:

23      (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive

24      claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5)

25      the possibility of a dispute concerning material facts, (6) whether the underlying default

26      was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of

27      Civil Procedure favoring decisions on the merits.

28  Case No.: 5:21-cv-04195-EJD
    ORDER GRANTING DEFAULT JUDGMENT
    2

United States District Court
Northern District of California

1   *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citing 10 Moore's Federal Practice

2   § 55).  In evaluating these factors, all factual allegations in the complaint are taken as true, except

3   those relating to damages.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.

4   1987).

5   ### III.   Jurisdiction and Service of Process

6   Before entering default judgment, a court must determine whether it has subject matter

7   jurisdiction over the action and personal jurisdiction over the defendant.  *See In re Tuli*, 172 F.3d

8   707, 712 (9th Cir. 1999) ("A judgment entered without personal jurisdiction over the parties is

9   void.").

10  ### A.  Subject Matter Jurisdiction

11  District courts have subject matter jurisdiction over all civil actions arising under the laws

12  of the United States.  28 U.S.C. § 1331.  Further, in any civil action where the district courts have

13  subject matter jurisdiction, the district courts will also have supplemental jurisdiction over all

14  other claims that are so related to claims in the action, such that they form part of the same case or

15  controversy.  28 U.S.C. § 1367.  Plaintiff's claim for relief pursuant to the ADA presents a civil

16  action arising under a law of the United States.  Therefore, this Court has subject matter

17  jurisdiction over Plaintiff's ADA claim.  Moreover, Plaintiff's claim for relief pursuant to the

18  Unruh Act is related to the ADA claim because it arises out of the same "case or controversy,"

19  namely Plaintiff's visit to Kikusushi where he encountered alleged violations of both laws.  *See* 28

20  U.S.C. § 1367(a).  Therefore, the Court has supplemental jurisdiction over Plaintiff's Unruh Act

21  claim.

22  ### B.  Personal Jurisdiction and Service of Process

23  Serving a summons establishes personal jurisdiction over a defendant who is subject to the

24  jurisdiction of a court of general jurisdiction in the state where the district court is located.  Fed. R.

25  Civ. P. 4(k)(1).  Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, an individual

26  defendant may be served by: (1) delivering a copy of the summons and complaint to the individual

27  personally; (2) leaving a copy of the summons and complaint at the individual's dwelling or usual

28  Case No.: 5:21-cv-04195-EJD
    ORDER GRANTING DEFAULT JUDGMENT

place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of the summons and complaint to an agent authorized by appointment or law to receive service of process.  Fed. R. Civ. P. 4(e)(2).  Alternatively, an individual defendant may be served with process pursuant to the law of the state where the district court is located.  Fed. R. Civ. P. 4(e)(1).

Under California law, individual defendants may be served by several means, including personal delivery of the summons and complaint to the individual or the individual's authorized agent.  Cal. Code Civ. Proc. §§ 415.10, 416.90.  An individual defendant may also be served under California law through substituted service by "leaving a copy of the summons and complaint during usual office hours in [the defendant's] office . . . with the person who is apparently in charge thereof . . . and by thereafter mailing a copy of the summons and complaint . . . where a copy of the summons and complaint were left."  Cal. Code Civ. Proc. § 415.20(a).

The record indicates that Plaintiff successfully effectuated personal service against each Defendant on June 21, 2021.  Dkt. Nos. 10–11.  The Court is satisfied that Plaintiff gave Defendants proper service of process under both the Federal Rules of Civil Procedure and the California Code of Civil Procedure.  Moreover, Plaintiff alleges that both Defendants are limited liability corporations incorporated in California and are thus subject to the general jurisdiction of this Court.  Therefore, the Court has personal jurisdiction over the Defendants.

IV. ***Eitel* Factors**

**A.  Possibility of Prejudice to the Plaintiff**

The first *Eitel* factor requires the Court to consider whether Plaintiff would be prejudiced if default judgment is not entered.  If default judgment is not entered, Plaintiff will have no means of recourse against Defendants.  As such, Plaintiff will be prejudiced if default judgment is not entered.  *See, e.g., Johnson v. In Suk Jun*, No. 19-CV-06474-BLF, 2020 WL 6507995, at *3 (N.D. Cal. Nov. 5, 2020); *Ridola v. Chao*, No. 16-CV-02246-BLF, 2018 WL 2287668, at *5 (N.D. Cal. May 18, 2018) (finding that plaintiff would be prejudiced if default judgment was not entered because she "would have no other means of recourse against Defendants for the damages caused

1   by their conduct").

2   **B. Substantive Merits and Sufficiency of the Claims**

3   Under the second and third *Eitel* factors, the Court must examine the merits of a plaintiff's

4   substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471–72; *see Bd. of*

5   *Trustees, I.B.E.W. Local 332 Pension Plan Part A v. Delucchi Elec., Inc.*, No. 5:19-CV-06456-

6   EJD, 2020 WL 2838801, at *2 (N.D. Cal. June 1, 2020) ("Courts often consider the second and

7   third *Eitel* factors together") (citing *PepsiCo, Inc. v. Cal. Security Cans*, 283 F. Supp. 2d 1172,

8   1177 (C.D. Cal. 2002)). At this stage, the Court takes "the well-pleaded factual allegations" in the

9   complaint as true. However, the "defendant is not held to admit facts that are not well pleaded or

10  to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).

11  "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not

12  established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

13  The motion seeks default judgment on two claims: (a) a violation of the Americans with

14  Disabilities Act of 1990 ("ADA"); and (b) a violation of the California Unruh Civil Rights Act

15  (the "Unruh Act"). The Court examines each claim in turn.

16  **i. Title III of the ADA**

17  Title III of the ADA prohibits discrimination based on disability within places of public

18  accommodation. Pursuant to 42 U.S.C. § 12182(a) "[n]o individual shall be discriminated against

19  on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

20  privileges, advantages, or accommodations of any place of public accommodation by any person

21  who owns, leases (or leases to), or operates a place of public accommodation." For the purposes

22  of Title III, discrimination includes "a failure to remove architectural barriers . . . in existing

23  facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv).

24  "Readily achievable" is defined as "easily accomplishable and able to be carried out without much

25  difficulty or expense." 42 U.S.C. § 12181(9).

26  First, Plaintiff must establish Article III standing to bring a claim under the ADA. To

27  establish Article III standing, Plaintiff must demonstrate he suffered an injury in fact, traceable to

28  Case No.: 5:21-cv-04195-EJD
    ORDER GRANTING DEFAULT JUDGMENT

5

United States District Court
Northern District of California

1    Defendants' conduct, and redressable by a favorable court decision.  *Ridola*, 2018 WL 2287668, at

2    *5 (citing *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1162 (S.D. Cal. 2006)).  Plaintiff

3    claims that he suffers from a disability within the meaning of the ADA.  Compl. ¶ 1.  Plaintiff also

4    alleges that he personally encountered the lack of wheelchair accessible outside dining surfaces

5    and wheelchair accessible paths of travel at Kikusushi, which are access barriers under the ADA.

6    *Id*. ¶ 10–22.  Further, Plaintiff claims that he will return to Kikusushi once its facilities are made

7    accessible.  *Id.* ¶ 27; *see Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1008 (C.D. Cal. 2014)

8    ("Indeed, '[d]emonstrating an intent to return to a non-compliant accommodation is but one way

9    for an injured plaintiff to establish Article III standing to pursue injunctive relief.'" (quoting

10   *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 949 (9th Cir. 2011)).  Because Plaintiff's

11   factual allegations are accepted as true, and an award of statutory damages and injunctive relief

12   would redress Plaintiff's alleged injuries, the Court finds that Plaintiff has Article III standing to

13   sue under the ADA.

14          Next, Plaintiff must establish all the elements of a Title III discrimination claim.  He must

15   show that (1) he is disabled within the meaning of the ADA; (2) Defendants own, lease, or operate

16   a place of public accommodation; and (3) he was denied public accommodations by Defendants

17   because of his disability.  *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).  To

18   succeed on an ADA claim based on architectural barriers, Plaintiff "must also prove that: (1) the

19   existing facility presents an architectural barrier prohibited under the ADA; and (2) the removal of

20   the barrier is readily achievable."  *Ridola*, 2018 WL 2287668, at *5.

21          Under the ADA, a physical impairment that substantially affects a major life activity, such

22   as walking, qualifies as a disability.  42 U.S.C. §§ 12102(1)(A), (2)(A).  As noted, Plaintiff is a C-

23   5 quadriplegic who uses a wheelchair for mobility.  Compl. ¶ 1.  Thus, Plaintiff has established

24   that he has a disability within the meaning of the ADA.

25          With respect to the Defendants' ownership of operation of the place of public

26   accommodation, Plaintiff alleges that Alchena Capital LLC owns Kikusushi, and that Prospect

27   Venture LLC owns the property on which Kikusushi sits.  Plaintiff submitted records to

United States District Court
Northern District of California

substantiate these allegations. Exhibit 5, Dkt. No. 18-7.

Plaintiff alleges that during his visit to Kikusushi, he personally encountered access barriers with respect to the lack of wheelchair accessible outside dining surfaces and wheelchair accessible paths of travel and was therefore denied public accommodations by Defendants because of his disability. Compl. ¶¶ 10–22. Specifically, he alleges that the lack of sufficient knee and toe clearance beneath the outside dining surfaces violates § 306 of the 2010 ADA Standards and that the ramp without a level landing at the entrance of the building violates § 208 of the 2010 ADA Standards. Mot. at 8–9. Plaintiff has submitted several photographs that document these violations. *See* Exhibit 4, Dkt. No. 18-6. Accepting these allegations as true, the Court finds that Plaintiff has sufficiently established that Kikusushi has architectural barriers prohibited under the ADA.

Finally, with respect to the requirement that removal of the barriers be "readily achievable," Plaintiff argues that this question is an affirmative defense that must be pled by the answering party. *See* Mot. at 9; *see also Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127, 1133 (E.D. Cal. 2007). Accordingly, Plaintiff believes that this affirmative defense has been waived because Defendants have not appeared in this matter. *See* Mot. at 9.

The Ninth Circuit recently decided to follow a burden-shifting framework to determine who bears the burden of proving that removal of an architectural barrier is readily achievable. *See Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030 (9th Cir. 2020). As stated in a recent case from this district, under this burden-shifting analysis, "the plaintiff bears the initial burden of *plausibly* showing that a proposal for removing a barrier is readily achievable, and then the defendant bears the ultimate burden of persuasion on an affirmative defense that removal of a barrier is not readily achievable." *In Suk Jun*, 2020 WL 6507995, at *5 (citing *Lopez*, 974 F.3d at 1034–39).

The Court finds that Plaintiff has met his initial burden of plausibly showing that removal of the identified barriers is readily achievable. Plaintiff alleges that the identified barriers are "easily removed without much difficulty or expense" and that they are "the types of barriers

Case No.: 5:21-cv-04195-EJD
ORDER GRANTING DEFAULT JUDGMENT
7

United States District Court
Northern District of California

1    identified by the Department of Justice as presumably readily achievable to remove."  Compl.

2    ¶ 26.  Additionally, the Complaint alleges that "there are numerous alternative accommodations"

3    to provide people with disabilities a greater level of access even if Defendants could not achieve a

4    complete removal of barriers.  *Id.*

5         Federal regulations provide a non-exclusive list of steps to remove barriers, including

6    "[i]nstalling ramps."  28 C.F.R. § 36.304(b)(1).  Courts in this district have also observed that the

7    listed items are "examples of readily achievable steps to remove barriers."  *Johnson v. Altamira*

8    *Corp.*, No. 16-CV-05335 NC, 2017 WL 1383469, at *3 (N.D. Cal. Mar. 27, 2017), *report and*

9    *recommendation adopted*, No. 16-CV-05335-LHK, 2017 WL 1365250 (N.D. Cal. Apr. 14, 2017).

10   Moreover, at the default judgment stage, courts have found that allegations like Plaintiff's are

11   sufficient.  *See, e.g., Ridola*, 2018 WL 2287668, at *10-*11 (concluding that plaintiff met his

12   burden with respect to defendant's parking spaces and guestrooms); *In Suk Jun*, 2020 WL

13   6507995, at *5 (concluding that plaintiff met his burden with respect to parking violations based

14   on allegations that there was no access aisle next to the defendant's accessible parking spaces).

15        Because Defendants have not appeared in this action, they necessarily have failed to meet

16   their burden of showing that removal of the identified barriers is not readily achievable.  Thus, the

17   Court finds that Plaintiff has alleged the requisite elements for an ADA claim.

18                              **ii.    Unruh Civil Rights Act**

19        "Any violation of the ADA necessarily constitutes a violation of the Unruh Act."  *Molski*,

20   481 F.3d at 731.  Because Plaintiff has alleged an ADA claim based on architectural barriers at

21   Kikusushi, he has also alleged an Unruh Act claim as to those barriers.

22                              **C.  Sum of Money in Dispute**

23        "When the money at stake in the litigation is substantial or unreasonable, default judgment

24   is discouraged."  *Bd. of Trustees v. Core Concrete Const., Inc.*, No. C 11-02532 LB, 2012 WL

25   380304, at *4 (N.D. Cal. Jan. 17, 2012), *report and recommendation adopted*, No. C 11-02532

26   JSW, 2012 WL 381198 (N.D. Cal. Feb. 6, 2012).  However, "where the sum of money at stake is

27   tailored to the specific misconduct of the defendant, default judgment may be appropriate."  *Id.*

28   Case No.: 5:21-cv-04195-EJD
     ORDER GRANTING DEFAULT JUDGMENT

United States District Court
Northern District of California

1    (citing *Bd. of Trustees of the Sheet Metal Workers Health Care Plan of N. Cal. v. Superhall Mech.,*

2    *Inc.*, No. C-10-2212 EMC, 2011 WL 2600898, at *2 (N.D. Cal. June 30, 2011)).

3            Plaintiff seeks statutory damages of $8,000 under the Unruh Act and an award of $2,972

4    for attorneys' fees and costs.  Mot. at 13.  The Court reduces this amount as discussed below.

5    While the sum awarded is not insignificant, the Court finds that it is proportional to the conduct

6    alleged and that this factor weighs in favor of default judgment.

7                    **D.  Possibility of Dispute Concerning Material Facts**

8            Under the fifth and sixth *Eitel* factors, the Court considers whether there is a possibility of

9    a dispute over material facts and whether Defendants' failure to respond was the result of

10   excusable neglect.  *Eitel*, 782 F.2d at 1471-72; *Love v. Griffin*, No. 18-CV-00976-JSC, 2018 WL

11   4471073, at *5 (N.D. Cal. Aug. 20, 2018), *report and recommendation adopted*, No. 18-CV-

12   00976-JD, 2018 WL 4471149 (N.D. Cal. Sept. 17, 2018); *Ridola*, 2018 WL 2287668, at *13.

13           The Complaint asserts plausible claims for violations of the ADA and the Unruh Act, and

14   all liability-related allegations are deemed true.  *See TeleVideo Systems, Inc.*, 826 F.2d at 917–18

15   (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law

16   is that upon default the factual allegations of the complaint . . . will be taken as true.").

17   Defendants were served with the Complaint, the motions for Entry of Default, the Motion for

18   Default Judgment, and the Declaration of Scott Johnson in Support of Motion for Default

19   Judgment.  Dkt. Nos. 6, 13, 14, 18. 22.  Despite being properly served, Defendants have neither

20   appeared nor answered the Complaint.  There are no disputes as to Plaintiff's allegations and no

21   indication that Defendants' default was due to excusable neglect.  *See In Suk Jun*, 2020 WL

22   6507995, at *6 (finding that defendants' failure to appear suggests that they chose not to present a

23   defense).  Accordingly, these factors weigh in favor of default judgment.

24                    **E.  Strong Policy Favoring Decisions on the Merits**

25           The last *Eitel* factor examines whether the policy of deciding a case based on the merits

26   precludes entry of default judgment.  *Eitel*, 782 F.2d at 1472.  In *Eitel*, the Ninth Circuit

27   admonished that "[c]ases should be decided on their merits whenever reasonably possible."  *Id*.

28   Case No.: 5:21-cv-04195-EJD
     ORDER GRANTING DEFAULT JUDGMENT

United States District Court
Northern District of California

"The existence of Federal Rule of Civil Procedure 55(b), however, shows that this policy is not dispositive." *McMillan Data Commc'ns, Inc. v. AmeriCom Automation Servs., Inc.*, No. 14-CV-03127-JD, 2015 WL 4380965, at *11 (N.D. Cal. July 16, 2015) (citing *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996)).  Moreover, a defendant's failure to appear renders a decision on the merits impracticable, if not impossible. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (citation and quotation marks omitted).

Given that Defendants in no way participated in the proceedings, a decision on the merits is impracticable.  "In situations such as this, Rule 55(b) allows the court to grant default judgment." *Bd. of Trustees v. Diversified Concrete Cutting, Inc.*, No. 17-CV-06938-MEJ, 2018 WL 3241040, at *5 (N.D. Cal. July 3, 2018), *report and recommendation adopted sub nom. Bd. of Trustees as Trustees of Laborers Health & Welfare Tr. Fund for N. Cal. v. Diversified Concrete Cutting, Inc.*, No. 17-CV-06938-RS, 2018 WL 4775429 (N.D. Cal. July 27, 2018).  As such, the seventh *Eitel* factor weighs in favor of default judgment.

### F.  Conclusion

After considering all seven *Eitel* factors and the circumstances of this case, the Court finds that default judgement is warranted and **GRANTS** Plaintiff's motion for default judgment against Defendants.

### V.     Relief Requested

Because this Court concludes that default judgment is warranted, it now considers Plaintiff's request for injunctive relief, statutory damages under the Unruh Act, and attorneys' fees and costs.

### A.  Injunctive Relief

Plaintiff seeks an order requiring Defendants to provide wheelchair accessible outside dining surfaces and wheelchair accessible paths at Kikusushi.  Mot. at 2.  Aggrieved individuals "may obtain injunctive relief against public accommodations with architectural barriers, including 'an order to alter facilities to make such facilities readily accessible to and usable by individuals

United States District Court
Northern District of California

with disabilities.'"  *Molski*, 481 F.3d at 730 (quoting 42 U.S.C. § 12188(a)(2)).  Injunctive relief is

also available under the Unruh Act.  *See* Cal. Civ. Code § 52.1.  "The standard requirements for

equitable relief need not be satisfied when an injunction is sought to prevent the violation of a

federal statute that specifically provides for injunctive relief."  *Antoninetti v. Chipotle Mexican*

*Grill, Inc.*, 643 F.3d 1165, 1175-76 (9th Cir. 2010) (citations omitted).  Thus, injunctive relief is

proper under the ADA where the plaintiff establishes that "architectural barriers at the defendant's

establishment violate the ADA and the removal of the barriers is readily achievable."  *Ridola*,

2018 WL 2287668, at *13 (citing *Moreno v. La Curacao*, 463 F. App'x 669, 670 (9th Cir. 2011)).

As discussed above, Plaintiff has shown that he is entitled to injunctive relief with respect

to the wheelchair accessible outside dining surfaces and wheelchair accessible paths at Kikusushi.

Therefore, the Court **GRANTS** his request for injunctive relief.

## B.  Statutory Damages

Plaintiff seeks $8,000 in statutory damages for Defendants' violation of the Unruh Act.

The Unruh Act provides a minimum statutory damages award of $4,000 for each violation.  Cal.

Civ. Code § 52(a).  Plaintiff "need not prove [he] suffered actual damages to recover the

independent statutory damages of $4,000" per violation.  *Molski*, 481 F.3d at 731.  "Any violation

of the ADA necessarily constitutes a violation of the Unruh Act."  *Id.* at 731 (citing Unruh Act,

Cal. Civ. Code § 51(f)).

Plaintiff has sufficiently pled that the outside dining surfaces and the entrance ramp at

Kikusushi did not meet ADA standards.  Each of these barriers constitutes a violation of the Unruh

Act.  The Court, therefore, **GRANTS** Plaintiff $4,000 in statutory damages for each violation, for

a total of $8,000.

## C.  Attorneys' Fees

Plaintiff requests $2,100 in attorneys' fees.  Both the ADA and the Unruh Act permit

recovery of fees by a prevailing plaintiff.  42 U.S.C. § 12205; Cal. Civ. Code § 55.  Such fee-

shifting statutes "enable private parties to obtain legal help in seeking redress for injuries resulting

from actual or threatened violation of specific . . . laws."  *Pennsylvania v. Del. Valley Citizens'*

United States District Court
Northern District of California

Case No.: 5:21-cv-04195-EJD
ORDER GRANTING DEFAULT JUDGMENT
11

1   *Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987).  Recovery

2   statutes, however, are not intended "to punish or reward attorneys."  *Van Gerwen v. Guarantee*

3   *Mut. Life Co.*, 214 F.3d 1041, 1047 (9th Cir. 2000).  To calculate recoverable fees, both federal

4   and state courts look to the lodestar method.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983);

5   *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001).  The court arrives at this figure by multiplying

6   the number of hours reasonably expended by a reasonable hourly rate.  *Hensley*, 461 U.S. at 433;

7   *Ketchum*, 24 Cal. 4th at 1132.

8                                    **i.       Hourly Rate**

9          Plaintiff is represented by attorneys from Potter Handy LLP (also known as the Center for

10   Disability Access).  On the invoice for their work, counsel's billing rates are listed: $650/hour for

11   Mark Potter, $500/hour for Amanda Seabock, $400/hour for Tehniat Zaman.  Declaration of

12   Russell Handy in Support of Plaintiff's Application for Default Judgment ("Handy Decl."), Dkt.

13   No. 18-3.  Numerous judges in this district have held that these rates are unreasonably high, given

14   the routine and formulaic nature of the ADA cases litigated by Potter Handy LLP.  See *Love v.*

15   *Mustafa*, No. 20-cv-02071-PJH (AGT), 2021 WL 2905427, at *2 (N.D. Cal. June 11, 2021)

16   (collecting cases), *adopted* No. 20-cv-02071-JPH, 2021 WL 2895957 (N.D. Cal. July 9, 2021).

17   These same judges have noted that the evidence regularly submitted to support these rates, *i.e.*, the

18   2010 Pearl Declaration, the 2018 Real Rate Report, and the 2019 O'Connor Declaration—which

19   Plaintiff also relies on here—is not persuasive.  Exhibits 6–8, Dkt. No. 18.  The Pearl Declaration

20   is outdated, the 2018 Real Rate Report is not focused on the market for ADA legal work, and the

21   O'Connor Declaration identifies a range of rates without establishing that Potter Handy LLP's

22   rates should fall on the higher end of that range.  Based on these factors, judges in this district

23   have held that the following discounted rates are more appropriate: $475/hour (not $650/hour) for

24   Mark Potter, $350/hour (not $500/hour) for Amanda Seabock, and $250/hour (not $400/hour) for

25   Tehniat Zaman.  *See Johnson v. Ramirez*, No. 20-CV-04359-TSH, 2022 WL 1019554, at *10

26   (N.D. Cal. Mar. 15, 2022) (holding, in another ADA case litigated by Potter Handy LLP, that

27   these lower rates were reasonable for these attorneys performing this work).

28   Case No.: 5:21-cv-04195-EJD
     ORDER GRANTING DEFAULT JUDGMENT
                                          12

United States District Court
Northern District of California

As for the rate billed by counsel's legal assistants and paralegals including Marcus Handy, $100/hour (not $200/hour) is reasonable. *See Johnson v. Lo*, No. 20-CV-06096-PJH (AGT), 2021 WL 5236552, at *4 (N.D. Cal. Oct. 21, 2021) (holding, in another ADA case litigated by Potter Handy LLP, that $100/hour was a reasonable rate for all of Potter Handy's paralegals) (citing *Johnson v. Shahkarami*, No. 20-CV-07263-BLF, 2021 WL 1530940, at *10 (N.D. Cal. Apr. 19, 2021)).

### ii.    Hours Billed

The Court finds the collective 8.1 hours billed by the attorneys and paralegals in this matter to be reasonable. In sum, using the reasonable rates outlined above and the hours invoiced, the Court awards attorneys' fees of $1,480 as detailed below.

| Attorney/Paralegal | Total Time | Hourly Rate | Amount |
|---|---|---|---|
| M. Potter | 0.8 | $475 | $380 |
| A. Seabock | 0.1 | $350 | $35 |
| T. Zaman | 2.3 | $250 | $575 |
| A. Sheaffer | 0.5 | $100 | $50 |
| D. Shetty | 0.4 | $100 | $40 |
| G. Manalo | 0.3 | $100 | $30 |
| M. Handy | 1.2 | $100 | $120 |
| T. Pannu | 0.1 | $100 | $10 |
| S. Srivastava | 0.2 | $100 | $20 |
| S. Bukkan | 2.2 | $100 | $220 |
| **Total** | **8.1** | | **$1480** |

### iii.    Costs

Section 505 of the ADA authorizes reasonable "litigation expenses and costs" in any action brought under the Act. 42 U.S.C. § 12205. This includes all costs normally associated with

litigation including investigative costs. *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002).

Plaintiff seeks $872, consisting of $70 for service costs, $402 in filing fees, and $400 in investigation fees. Plaintiff filed Proof of Service documents indicating that he paid fees of $35 per Defendant to serve the two Defendants. The invoice submitted by counsel includes a line item for "Investigator" at $400. The Court finds that this documentation constitutes sufficient evidence in support of his request for costs. The Court, therefore, awards $872 in costs.

**VI.    Conclusion**

For the reasons stated, Plaintiff's Motion for Default Judgment is **GRANTED** as to Defendants Prospect Venture LLC and Alchena Capital LLC.

Plaintiff's request for statutory damages in the amount of $8,000, attorneys' fees in the amount of $1480, and costs in the amounts of $872 for a total judgment of $10,352.00 is **GRANTED**.

Plaintiff's request for injunctive relief is **GRANTED**. To the extent that they have the legal right and ability to do so, Defendants are hereby ordered to provide wheelchair accessible outside dining surfaces and wheelchair accessible paths of travel at Kikusushi Japanese Restaurant located at 1655 S De Anza Blvd, Cupertino, California, in compliance with the Americans with Disabilities Act Accessibility Guidelines no later than six months after service of this injunction.

**IT IS SO ORDERED.**

Dated: June 23, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-04195-EJD
ORDER GRANTING DEFAULT JUDGMENT
14

United States District Court
Northern District of California